# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

KALIEGH O. on behalf of S.S.T., a minor,

                Plaintiff,

        v.                                No. 5:17-CV-960 (CFH)

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                Defendant.

---

**APPEARANCES:**

Olinsky Law Group
300 S. State Street
Suite 420
Syracuse, New York 13202
Attorney for Plaintiff

Social Security Administration
Office of Regional General Counsel,
Region II
26 Federal Plaza, Rm. 3904
New York, New York 10278
Attorney for Defendant

**OF COUNSEL:**

HOWARD D. OLINKSY, ESQ.

JASON P. PECK, ESQ.
Special Assistant U.S. Attorney

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

## MEMORANDUM-DECISION AND ORDER

Plaintiff Kaliegh O. brings this action on behalf of her minor son S.T.T. pursuant to

42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security

("Commissioner") denying her application for supplemental security income ("SSI")

payments. Dkt. No. 1 ("Compl.").[1] Plaintiff moves for a finding of disability or remand for a further hearing, and the Commissioner cross moves for a judgment on the pleadings. Dkt. Nos. 10, 11. For the following reasons, the determination of the Commissioner is affirmed.

## I. Background

S.S.T. was born in 2008. T. 84.[2] At the time of his application, S.S.T. was a "preschooler" and at the time of the hearing, a "school-age child," as defined in 20 C.F.R. § 416.926a(g)(2). Id. at 60, 84. S.S.T.'s alleged disability consists of attention hyperactivity disorder ("ADHD") and a learning disability. Id. at 84.

On April 7, 2014, Kaliegh O. protectively filed a Title XVI application for supplemental security income on S.S.T.'s behalf. T. 172-77. Kaliegh O. alleged disability beginning on February 1, 2014. Id. at 84. Plaintiff's application was initially denied on July 15, 2014. Id. at 94-97. Plaintiff requested a hearing, and a hearing was held on October 1, 2015 before Administrative Law Judgment ("ALJ") F. Patrick Flanagan. Id. at 54-83. ALJ Flanagan determined that S.S.T. "ha[d] not been under a disability within the meaning of the Social Security Act since April 7, 2014, the date the application was filed. Id. at 22. The Appeals Council denied plaintiff's request for review, making the ALJ's findings the final determination of the Commissioner. Id. at 1-7. Plaintiff commenced this action on

---

[1] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18. Dkt. Nos. 7, 8.

[2] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. Dkt. No. 9. Citations refer to the pagination in the bottom right-hand corner of the administrative transcript, not the pagination generated by CM/ECF.

August 30, 2017.  <u>See</u> Compl.

## II. Discussion

## A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  <u>See</u> 42 U.S.C. §§ 405(g), 1388(c)(3); <u>Wagner v. Sec'y of Health & Human Servs.</u>, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  <u>See</u> <u>Johnson v. Bowen</u>, 817 F.2d 983, 986 (2d Cir. 1987); <u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Halloran v. Barnhart</u>, 362 F.3d 28, 31 (2d Cir. 2004) (citing <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (internal citations omitted)).  The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder *would have to conclude otherwise*."  <u>Brault v. Soc. Sec. Admin., Comm'r</u>, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotations marks omitted).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence.  <u>See</u> <u>Martone v. Apfel</u>, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing <u>Johnson</u>, 817 F.2d at 986).  However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial

3

evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

## B. Determination of Disability

To qualify for disability benefits under the Personal Responsibility and Work Opportunity Reconciliation Act, an individual

> under the age of 18 shall be considered disabled ... if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i). The Act does not require that the severity of a child's impairment be of comparable severity to that of a disabled adult. In order to determine if a child is disabled, the ALJ must proceed with a three-step analysis. See 20 C.F.R. § 416.924(a). The first step requires the ALJ to consider whether the child is engaged in substantial gainful activity. Id. at § 416.924(b). If the child is so engaged, he or she will not be awarded SSI benefits. Id. The second step requires an examination as to whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as severe, in that they cause more than a minimal functional limitation. See 20 C.F.R. § 416.924(c); Kittles v. Barnhart, 245 F. Supp. 2d 479, 488 (E.D.N.Y. 2003). In other words, "a child is [disabled under the Social Security Act] if his impairment is as severe as one that would prevent an adult from working." Zebley v. Sullivan, 493 U.S. 521, 529 (1990). At the third step, the ALJ must determine whether

the child has an impairment or combination of impairments that meets or medically equals the severity of a listing under 20 C.F.R. Pt. 404, Subpt. P., Appendix 1. If the child has an impairment or combination of impairments that meets or medically equals the severity of, or functional equivalent of, the listings, and the twelve-month durational requirement is satisfied, the child will be deemed disabled. See 20 C.F.R. § 416.924(d)(1).

In order to determine whether an impairment of combination of impairments functionally equals the listings, the ALJ must assess the child's functioning in six main areas referred to as "domains." See 20 C.F.R. § 416.924(d)(1); see Ramos v. Barnhart, No. 02-CV-3127, 2003 WL 21032012, at *8 (S.D.N.Y. May 6, 2003). The regulations define the domains as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). The domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. See id.

If the child as "marked limitations" in two domains or an "extreme limitation" in one domain, then the child's impairment is functionally equivalent to a disability in the Listings. See id. § 416.926a(d). When a child has a marked limitation, the

> impairment(s) interferes seriously with [his or her] ability to independently initiate, sustain, or complete activities. [The child's] day-to-day functioning may be seriously limited when [the] impairment(s) limits only one activity or when the interactive and cumulative effects of [the] impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme."

20 C.F.R. § 416.926a(e)(2)(i). A marked limitation is equivalent to the functioning that would be found on standardized testing with scores that are at least two, but less than

three, standard deviations below the norm.  Id.

An extreme limitation is found where the child's

> impairment(s) interferes very seriously with [his or her] ability
> to independently initiate, sustain, or complete activities.  [The]
> day-to-day functioning may be very seriously limited when [the]
> impairment(s) limits only one activity or when the interactive
> and cumulative effects of [the] impairment(s) limit several
> activities.  "Extreme" limitation also means a limitation that is
> "more than marked". . . . [but] does not necessarily mean a
> total lack or loss of ability to function.

20 C.F.R. § 416.926a(e)(3)(i).  An extreme limitation is the equivalent of functioning found

on standardized testing scores that are at least three standard deviations below the mean.

Id.

## C. ALJ Decision

Applying the above-mentioned principles, the ALJ made the following six findings

of fact and conclusions of law.  First, the ALJ determined that plaintiff was a "preschooler"

at the time of filing and a "school-aged child" at the time of the hearing pursuant to 20

C.F.R. § 416.926a(g)(2).  T. 25.  Second, the ALJ found that S.S.T. had not engaged in

substantial gainful activity since the filing of his application.  Id.  Third, the ALJ found that

S.S.T. had the severe impairments of ADHD and disruptive mood dysregulation disorder.

Id.  Fourth, the ALJ found that S.S.T. did not have an impairment or combination of

impairments that meets or medically equals the severity of one of the listed impairments

in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id.  Fifth, the ALJ determined that S.S.T.

did not have an impairment of combination of impairments that functionally equals the

severity of the Listings.  Id. at 26.  Sixth, and finally, the ALJ concluded that S.S.T. "ha[d]

6

not been disabled, as defined in the Social Security Act, since April 7, 2014, the date the application was filed." Id. at 34.

## D. Arguments

In support of her motion, plaintiff makes three arguments. First, plaintiff argues that the ALJ erred in failing to reconcile the opinions of the teachers that he purported to give "some weight" to with his conclusion that plaintiff did not have a marked limitation in acquiring and using information, and by failing to give greater weight to Ms. Winters' opinion. Dkt. No. 11 at 9-14. Second, plaintiff argues that the ALJ's determination that S.S.T. did not meet Listing 112.11 was not supported by substantial evidence. Id. at 14-19. Lastly, plaintiff argues that the ALJ erred in failing to develop the record by not ordering a psychological consultative examination. Id. at 19-20. Conversely, the Commissioner argues that the ALJ's determination that S.S.T. was not disabled is supported by substantial evidence. See generally Dkt. No. 11.

## 1. Whether the ALJ Improperly Weighed the Opinion
## Evidence of S.S.T.'s Teachers

"While the opinions of educators and other non-medical sources are not entitled to controlling weight under the regulations, they are, nevertheless, deemed valuable sources of evidence in assessing impairment severity and functioning and should be considered by the ALJ." Reid v. Astrue, No. 1:07-CV-0577 (LEK), 2010 WL 2594611, at *5 n.4 (N.D.N.Y. June 23, 2010) (citing 20 C.F.R. § 404.1513(d)(2)). "Opinions offered by teachers 'should be evaluated by using the [20 C.F.R. § 416.927] factors,' although 'not every factor . . . will

apply in every case.'" Crouch v. Astrue, No. 5:11-820, 2012 WL 6948676, *3 (N.D.N.Y. Dec. 31, 2012) (citing SSR 06-03p, 2006 WL 2329939, at *5 (Aug. 9, 2006)), report-recommendation and adopted by 2012 WL 316547 (N.D.N.Y. Jan. 28, 2012).  These factors include "length of the relationship; consistency with other record evidence; extent of supporting evidence; cogency of the source's explanation; and expertise of the source." Bonet ex rel. T.B. v. Astrue, No. 1:11-CV-1140 (GLS), 2012 WL 3544830, at *7 (N.D.N.Y. Aug. 16, 2012) (citing SSR 06-03p, 2006 WL 2329939, at *4-5).

The domain of acquiring and using information considers "how well [a child] acquire[s] or learn[s] information, and how well [the child] use[s] the information [he or she] [has] learned."  20 C.F.R. §416.926a(g).  A preschooler should be able to listen to stories, count, rhyme words, and use words to ask questions; describe things, tell stories, follow directions, and a school-aged child "should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing your own ideas, and by understanding and responding to the opinions of others."  Id.  In this domain, the ALJ found that S.S.T "ha[d] less than marked limitation."  T. 29.  In making that determination, the ALJ stated:

> Ms. O'Brien indicates that her son has a learning disability. Although his school records show that he has some difficulty with reading, written language, and math, his school district has never classified him as learning disabled.  There is also an indication that some of his academic difficulties are related to increased absences from school.  He has received no special education classes or been held back in school.  He is reportedly able to use understandable speech, use sentences, recite stories, use sign language when speaking to his grandparents, draw, color, and use an Xbox and computer. This suggests that the claimant has less than marked limitations in the area of acquiring and using information.

8

Id. at 29. Plaintiff argues that, in making the above determination, there is no evidence that the ALJ analyzed S.S.T.'s teachers opinions using the factors set forth 20 C.F.R. § 416.927, nor did he explain any discrepancies between the opinions of S.S.T.'s teachers, and that of the state agency consultative medical examiner. See Dkt. No. 10 at 10, 12. The Commissioner argues that the ALJ's reliance on the state agency medical consultant in determining that S.S.T. had a less than marked limitation in the acquiring and using information domain is supported by substantial evidence. Dkt. No. 11 at 6-11.

### a. Relevant Opinion Evidence

On June 17, 2014, Shaun K. Winters, S.S.T.'s kindergarten teacher, submitted a questionnaire in connection with this action. T. 233-42. Ms. Winters stated that she knew S.S.T. for seven months, and interacted with him Monday through Friday, from 8:30 a.m. until 2:45 p.m. Id. at 235. She indicated that S.S.T. had an unusual degree of absenteeism, and was not present in school from December 2013 through April 2014. Id. As relevant to plaintiff's argument, Ms. Winters indicated that S.S.T. had problems functioning in the acquiring and using information domain. Id. at 236. She indicated that plaintiff had "[a] serious problem" with comprehending oral instructions, understanding school and content vocabulary, reading and comprehending written material, comprehending and doing math problems, expressing ideas in written form, learning new material, recalling and applying previously learned material, and applying problem-solving skills in class discussions. Id. She also indicated that S.S.T. had "[a]n obvious problem" in understanding and participating in class discussion and providing organized oral explanations and adequate descriptions.

On September 29, 2015, Nancy Whitney, S.S.T.'s first grade teacher, submitted a questionnaire in connection with this action. T. 307-13. As relevant to plaintiff's argument, Ms. Whitney indicated that S.S.T. had problems functioning in the acquiring and using information domain. Id. at 307. She indicated that S.S.T. had "[a] slight problem" in comprehending oral instructions; comprehending and doing math problems; providing organized oral explanations and adequate descriptions; recalling and applying previously learned material; and applying problem-solving skills in class discussions, "[a]n obvious problem" understanding school and content vocabulary; reading and comprehending written material; expressing ideas in written form; and learning new material, and "[n]o problem" understanding and participating in class discussions. Id. at 307-08. She also noted that S.S.T. "usually needs help after directions are given." Id. at 308.

The ALJ gave "some weight" to Ms. Winter's and Ms. Whitney's questionnaires, stating that "[t]he teachers who completed these reports are not acceptable medical sources, however, they have observed the claimant on a daily basis in a school setting." T. 27. He also noted that the teachers' findings that S.S.T. had limitations in the acquiring and using information domain was "consistent with [S.S.T.'s] longitudinal medical record, school reports, and activities of daily living." Id. at 28. However, the ALJ noted that S.S.T. "has greater limitations in the area of attending and completing tasks based on [his] reported symptoms and treatment history." Id.

The ALJ relied on the July 15, 2014 medical opinion of the non-examining state agency doctor M. Puttanniah, M.D. T. 27. Dr. Puttanniah found that S.S.T. had a "less than marked" limitation in the area of acquiring and using information, stating that S.S.T. "is enrolled in regular regular [sic] education & receives no special education services.

7/7/14 Pediatric Exam: Per mother, [S.S.T.] enrolled in fist grade classes. Speech intelligible. Teacher evaluation indicated [S.S.T.] with serious problems in most activities assessed for domain. Teacher noted [S.S.T.] had been absent from school from 12/13-4/14." Id. at 88. Dr. Puttanniah ultimately determined that S.S.T. was not disabled. Id. at 90.

The ALJ granted Dr. Puttanniah's medical opinion "significant weight." T. 27. He noted that the "DDS medical consultant is an acceptable medical source who has reviewed the claimant's medical and other records." Id. The ALJ stated that Dr. Puttanniah's finding that S.S.T. had "less than marked limitations in acquiring and using information . . . is consistent with [S.S.T.'s] clinical findings, treatment history, school records, and reported activities of daily living." Id. However, he declined to give the opinion greater weight due to certain inconsistencies in other domains with S.S.T.'s "ongoing mental symptoms and use of psychotropic medications" and treatment records. Id.

The ALJ also relied on the medical opinion of consultative examiner Kalyani Ganesh, M.D. T. 28. Dr. Ganesh assessed S.S.T.'s medical history, as well as his typical daily activities, which included playing with toys, playing by himself, drawing, coloring, and playing on the computer. Id. at 344-45. Dr. Ganesh noted that S.S.T. had a normal appearance. Id. at 345. His speech was intelligible, and his behavior was normal. Id. Dr. Ganesh described S.S.T. as "focused and cooperative" during the examination, and stated that he was "busy before and after" the appointment. Id. He diagnosed S.S.T. with ADHD. Id. at 347.

The ALJ gave "some weight" to Dr. Ganesh's opinion. T. 28. He set forth that the consultative examiner is an acceptable medical source, and that Dr. Ganesh's observations

that S.S.T. had "normal physical development, intelligible speech, and remained focused and cooperative is consistent with [S.S.T's] presentation during the consultative examination." Id. The ALJ declined to give greater weight to Dr. Ganesh's opinion due to the lack of doctor-patient relationship, and that she did not address S.S.T.'s "functional abilities in the domains of functioning." Id.

### b. Analysis

After careful consideration, the Court agrees with the Commissioner, and finds that the ALJ's assessment of a "less than marked limitation" in the acquiring and using information domain is supported by substantial evidence. As to plaintiff's contention that there is no evidence that the ALJ assessed Ms. Winters and Ms. Whitney's opinions under the factors set forth in 20 C.F.R. § 416.927, the Court finds this argument contrary to established precedent. The Second Circuit has stated that it does not require a "recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear." Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order) (citing Halloran, 362 F.3d at 31-32). That the ALJ did not specifically reference each of the factors in assessing the weight given to Ms. Winters and Ms. Whitney's questionnaires does not render the ALJ's assigned weight in error. In his assessment, the ALJ acknowledged that although the teachers were not acceptable medical sources, they "observed [S.S.T.] on a daily basis in a school setting," and their limitations were "consistent with [S.S.T.'s] longitudinal medical record, school reports, and activities of daily living." T. 28. Still, as the Commissioner notes, Ms. Winters and Ms. Whitney's assessments that S.S.T. suffered from, at most, "[a] serious problem" in certain areas

under the acquiring and using information domain do not automatically translate into a marked limitation. See Dkt. 11 at 9; T. 236, 307-08. It is "within the purview of the ALJ to evaluate [the] evidence and, based on the record as a whole, accord it the appropriate weight." Williams v. Comm'r. of Soc. Sec., 462 F. Supp. 2d 411, 414 (W.D.N.Y. 2006) (citing Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002) ("Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force[,]" this Court cannot substitute its own judgment for that of the Commissioner)).

Moreover, it was reasonable for the ALJ to rely on other relevant evidence in the record to the extent that he did, especially where the teachers' opinions are inconsistent with the record as a whole. Cf. Crouch, 2012 WL 6948676, at *3 ("The opinion of a 'non-medical source,' such as a teacher, may even 'outweigh the opinion from a medical source,' when the teacher 'has seen the individual more often and has greater knowledge of the individual's functioning over time and if the [teacher's] opinion has better supporting evidence *and* is more consistent with the evidence as a whole.'") (emphasis in original) (citing SSR 06-03p, 2006 WL 2329939, at *6). As the Commissioner argues, the ALJ gave "significant weight" to Dr. Puttanniah's determination, which "specifically considered the teachers' assessments," in concluding that S.S.T. had a less than marked limitation in the acquiring and using information domain. Dkt. No. 11 at 9; see T. 27-28, 85-86, 88. As such, although Dr. Puttanniah lacked a longstanding treating relationship with S.S.T., the ALJ was still entitled to rely on his assessment as "state agency medical consultants are considered 'highly-qualified' physicians . . . who are also experts in Social Security disability evaluations.'" Santos-Sanchez v. Astrue, 723 F. Supp.2d 630, 638 (S.D.N.Y. 2010) (quoting 20 C.F.R. § 404.1527(f)(2)(I)).

Furthermore, in her consultative examination report, Dr. Ganesh noted that according to plaintiff, S.S.T. "can play with toys, play by self, . . . draw, color, and play on the computer." T. 345. S.S.T.'s non-medical education records also establish a slow, but present improvement in his cognitive thinking and functioning. Although S.S.T.'s kindergarten teacher comments demonstrate that he had a "difficult time adjusting[,]" they note that he is "showing more classroom participation. T. 233. The first grade teacher comments state that he is "always polite and cooperative," "a pleasant and a friendly student," and that, although he has difficulty in reading and writing, he "knows the sounds of all the letters of the alphabet[.]" Id. at 298. In the final marking period, the teacher noted that, S.S.T. "had a good year. I really enjoyed watching him grow academically." Id. Although the record is clear, and the ALJ acknowledged, that S.S.T. had academic struggles, the teachers consistently reference S.S.T.'s absences from school. See id. at 233 (Marking Period 1: His attendance is having an affect on his learning in school."; Marking Period 2: "His attendance had a big impact on his learning. I was not able to do any ELA or Math assignments on him to determine his levels because he was not in school."), 298 (Marking Period 1: "Please make sure that [S.S.T.] attends school regularly."; Marking Period 2: "[S.S.T] has missed a large number of school days. His absences are hindering his academic progress."). Thus, based on these comments, as well as Dr. Puttanniah's assessment, see id. at 88 ("Teacher noted clmt had been absent from school from 12/13 through 4/14."), it was reasonable for the ALJ to interpret that the teachers correlated S.S.T.'s academic difficulties with his repeated absences. See id. at 29.

As the Commissioner sets forth, the progress notes from the Vera House, the housing unit where S.S.T. and plaintiff resided, show that S.S.T. "attended group" on at

least eight occasions in April and May 2014, participated in two arts and crafts projects, played video games, and was described as "well behaved" and "very smart and bright." T. 391; Dkt No. 11 at 11. Although plaintiff cites to low academic scores, S.S.T. was not held back a grade, and he did not attend special education classes.[3] T. 25 ("[C]laimant has never had an individualized education plan, received special education services, or been held back in school."), 223 (noting that S.S.T. did not attend special education classes or speech/language therapy), 232 ("[I]t was found that this student was not enrolled in a Special Education Program or has not received services.").

As to plaintiff's argument that the ALJ should have given more weight Ms. Winter's teacher questionnaire, the Court notes that it was "well within the ALJ's realm to resolve conflicting reports on the before him, and this Court cannot — and will not — disturb his conclusion." Lopez ex rel. L.J.L. v. Comm'r. of Soc. Sec., No. 11 Civ. 5792(KBF), 2012 WL 2497275, at *6 (S.D.N.Y. June 25, 2012) (citing Veino, 312 F.3d at 586). Thus, the evidence is sufficient to support the ALJ's conclusion that S.S.T. did not suffer from a marked limitation in the acquiring and using information domain because his limitations did not "interfere[ ] seriously with [his] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). As such, the Court will not disturb the determination of the Commissioner.

### 2. Listing 112.11

Plaintiff next argues that the ALJ's determination that S.S.T. did not meet Listing

---

[3] As the Commissioner states, Dr. Ganesh incorrectly noted that S.S.T. was in special education classes. T. 344; Dkt. No. 11 at 10.

112.11 was not supported by substantial evidence. Dkt. No. 10 at 14-19. Conversely, the Commissioner argues that substantial evidence supported the ALJ's finding. Dkt. No. 11 at 11-12. "To meet the impairment set forth in § 112.11, [as it existed at the time of the ALJ's decision,] the record must contain: (A) medically documented findings of marked[4] inattention, marked impulsiveness, and marked hyperactivity; (B) resulting in a marked impairment in at least two of the following: cognitive/communicative function, social functioning, personal functioning, or maintaining concentration, persistence and pace." Rice ex rel. T.C.K. v. Astrue, 32 F. Supp. 3d 113, 123 (N.D.N.Y. Jan. 6, 2012) (citing 20 C.F.R. pt. 404, Subpt. P, App. 1, at Listing 112.11); see also Brown v. Comm'r. of Soc. Sec., 430 F. Supp. 2d 102, 104 (W.D.N.Y. 2005). The claimant bears the burden of demonstrating that his or her impairments match or are equal in severity to a Listing. Rice, 32 F. Supp. 3d at 122 (citing Naegele v. Barnhart, 433 F. Supp. 2d 319, 324 (W.D.N.Y. 2006)). "To show that an impairment matches a Listing, the claimant must show that his or her impairments meet all of the specified criteria." Id. at 122-23 (citing Sullivan v. Zebley, 493 U.S. 521, 530 (1990); 20 C.F.R. § 416.925(d)).

The ALJ determined that S.S.T. did "not have an impairment or combination of impairments that [met] or medically equal[ed] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." T. 25. In making that determination, the ALJ stated that S.S.T. did "not satisfy Section 112.11 (ADHD) of the Listings because he has

---

[4] "A 'marked' impairment for purposes of meeting a Listing 'means more than moderate but less than extreme' degree of limitation. 'A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis.'" Brown, 430 F. Supp. 2d at 104 n.2 (quoting 20 C.F.R. pt. 404, Subpt. P, App. 1., at Listing 112.00(C)).

not demonstrated that he has marked inattention, marked impulsiveness, and marked hyperactivity with at least two of the appropriate age-group criteria in paragraph B2 of 112.02." Id. at 26.

Although plaintiff does identify record evidence depicting S.S.T.'s struggle with ADHD, the ALJ's written decision demonstrates that he focused on the disorder when conducting his analysis, as he identified S.S.T.'s ADHD as a "severe impairment[ ]". T. 26. The record also establishes that Dr. Puttanniah and Dr. Ganesh both diagnosed S.S.T. with ADHD. See id. at 87, 347. However, as the Commissioner notes, Dr. Puttanniah, "after considering the teachers' reports, Dr. Ganesh's examination results, and the other available medical evidence," Dkt. No. 11 at 12, determined that S.S.T.'s did not "meet, medically equal, or functionally equal" Listing 112.11. T. 89. The Court again observes that while S.S.T. did have academic struggles, he was never held back and did not receive special education services. See T. 25, 223, 232, 297-306.

The Court does acknowledge that when assessing whether plaintiff's impairments satisfied the functional equivalents section, the ALJ found that plaintiff had a marked limitation in the attending and completing tasks domain. T. 30. However, in making that determination, the ALJ noted that although S.S.T.'s school records "indicated that he is distracted, has difficulty finishing tasks, and misses quite a bit of school," his "[c]linical findings do not indicate that [he] exhibited attention/concentration deficits during most exams," aside from impulsiveness in his September 2015 psychological intake examination." Id. The ALJ also noted that S.S.T. was "reportedly able to perform tasks involving attention including watching movies, playing video games, working on a computer, and doing arts and crafts." Id.; see section II.D.1.b. supra.

Thus, considering the record evidence as a whole, including Dr. Puttanniah and Dr. Ganesh's opinions, the Court finds that there is such relevant evidence in the record that a "reasonable mind might accept as adequate to support a conclusion" that S.S.T. did not have marked inattention, impulsiveness Halloran, 362 F.3d at 31 (citing Richardson, 402 U.S. at 401 (internal citations omitted)). Moreover, the Court finds that as this is not a situation "in which we would be unable to fathom the ALJ's rationale in relation to evidence in the record," Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir. 1982), there is no need to remand this case to the ALJ for clarification. See Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983) (noting that when "the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability"); see I.C. v. Comm'r of Soc. Sec., 1:14-CV-1363 (GTS/WBC), 2016 U.S. Dist. LEXIS 15929, at *11-12 (N.D.N.Y. Jan. 12, 2016), report-recommendation and order adopted by Chandler v. Comm'r of Soc. Sec., 1:14-CV-1363 (GTS/WBC), 2016 U.S. Dist. LEXIS 15926 (N.D.N.Y, Feb. 10, 2016) (declining to remand where "other portions of the ALJ's detailed decision demonstrate that substantial evidence supports this part of the ALJ's determination.").

### 3.  Whether the ALJ Failed to Properly Develop the Record

Although the claimant has the general burden of proving that he or she has a disability within the meaning of the Social Security Act, "'the ALJ generally has an affirmative obligation to develop the administrative record' " due to the non-adversarial nature of a hearing on disability benefits. Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir.

2008) (quoting Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (citing Draegert v. Barnhart, 311 F.3d 468, 472 (2d Cir. 2002), Butts v. Barnhart, 388 F.3d 377, 383 (2d Cir. 2004), Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000)). "'It is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits.'" Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (quoting Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 508-09 (2d Cir. 2009)). An "ALJ must make every reasonable effort to help [the claimant] obtain medical reports from the claimant's medical sources so long as permission is granted to request such reports." Hart v. Comm'r, No. 07-CV-1270, 2010 WL 2817479, at *5 (N.D.N.Y. July 16, 2010) (quoting 20 C.F.R. § 404.1512(d) (internal quotation marks omitted)).

In his July 15, 2014 medical opinion, state agency consultant Dr. Puttanniah stated that a consultative examination should be conducted because "[t]he evidence as a whole, both medical and non-medical, is not sufficient to support a decision on the claim. Additional evidence is required to establish current severity of the individual's impairment(s)." T. 87. During the pediatric consultative examination, Dr. Ganesh stated that S.S.T.'s prognosis was "[t]o be determined by the psychologist." Id. at 347. Plaintiff argues that the ALJ's failure to order a psychological examination warrants remand. Dkt. No. 10 at 19-20.

"The ALJ has discretion on a case-by-case basis to determine whether a consultative examination is needed, and is only required to order such an examination where the examination is necessary to resolve a conflict or ambiguity in the record." Phelps v. Colvin, 20 F. Supp. 3d 392, 401 (W.D.N.Y. 2014) (citing 20 C.F.R. § 404.1519a(b)(4); Simon v. Colvin, No. 6:12-CV-6381 MAT, 2013 WL 4094612, at *6-7

(W.D.N.Y. Aug. 13, 2013) (finding no psychiatric consultative evaluation needed where substantial evidence in the record to support ALJ's conclusion). "'An ALJ is not obligated to order a consultative examination if the facts do not warrant or suggest the need for such an examination.'" Phelps, 20 F. Supp. 3d at 402 (quoting Brown v. Astrue, No. 11-CV-6329T, 2012 WL 2953213, at *7 (W.D.N.Y. July 19, 2012)). Conversely, "it is a reversible error for the ALJ to fail to obtain a consultative examination if such an evaluation is necessary for the ALJ to make an informed decision." Id. (citing Falcon v. Apfel, 88 F. Supp. 2d 87, 90-91 (W.D.N.Y. 2000)).

Here, the Court finds that a psychological consultative examination was not necessary for the ALJ to reach his determination. In making his findings of fact and conclusions of law, the ALJ noted that the "documented medical evidence of record indicates that claimant has ADHD and disruptive mood dysregulation disorder and that these impairments are severe because they cause more than minimal functional limitations." T. 25; see id. at 327-328, 331-332, 337-38 (S.S.T.'s pediatric medical records). He acknowledged that S.S.T. was prescribed Adderall to treat his ADHD and associated behaviors. Id. In March 2015, plaintiff underwent a CPEP Psychiatric Assessment due to depression and aggressive behavior, and began taking medication for disruptive mood dysregulation disorder. Id. at 25, 368-72. The next time he presented, the medical personnel noted plaintiff's subjective concerns that S.S.T. was "violent with kids at school and at home" and that he was "unmanageable," but observed that he was "pleasant, hyper but redirectable, well related with mom." Id. at 377-78. The medical personnel stated that S.S.T. was "not danger to self/others" and that there were "no obvious signs of distress noted." Id. at 378. His medication was increased. Id. The ALJ

further stated that S.S.T. "underwent an intake evaluation at Psychological Healthcare for on-going mental symptoms during which he exhibited poor impulse control." Id. at 25. The Court notes that this document entitled "Child/Adolescent Intake Diagnostic Evaluation Form" was not in evidence until after the October 1, 2015 hearing. See id. at 57 ("He just had his first visit yesterday at Psychological Health Care . . . We attempted the request a little bit too early, so they said no records, but now they should respond to it."). The ALJ observed that "[t]he remainder of clinical findings are generally negative for attention deficits or behavioral issues." Id. at 25. As to plaintiff's subjective complaint that S.S.T. had learning difficulties, the ALJ observed that S.S.T. never had an individualized education plan, nor did he receive special education services. T. 25, 223, 232. Thus, S.S.T. failed to demonstrate that he had a medically determinable learning disorder. Id. at 25.

Plaintiff's argument that the ALJ failed to develop the record because the state agency consultant required a further consultative examination is misplaced. Dkt. No. 10 at 19-20. As stated, the ALJ has the discretion to determine whether a consultative examination is needed, and such a determination is made on a case-by-case basis. See Phelps, 20 F. Supp. 3d at 402. Plaintiff "has not established beyond conclusory assertions that the record was insufficient for the ALJ to make his determination." Brandt v. Colvin, No. 3:13-CV-02165, 2014 WL 4793956, at *7 (M.D. Pa. Sept. 24, 2014) (citing Phelps, 20 F. Supp. 3d at 402). As it is clear that the ALJ assessed S.S.T.'s relevant medical evidence in the record concerning his alleged psychological impairments, the Court concludes that the ALJ fully developed the record.

### III. Conclusion

**WHEREFORE**, for the reasons stated above, it is hereby:

**ORDERED**, that plaintiff Kaliegh O.'s motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED**, that the Commissioner's motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated:     August 24, 2018
            Albany, New York

Christian F. Hummel
U.S. Magistrate Judge